Titkney, J.,
delivered the opinion of the Court.
There is no error in the decree of the Chancellor. On the 4th day of March, 1861, the following contract was entered into:
“Article of Agreement. I, William A. Stover, have this day bargained and agreed with a board of directors, to build a bridge across Rolachucky River, near James Johnson’s and James Allen’s, to be called, The Johnson and Allen Bridge. The said William A. Stover binds himself, in the penal sum of eleven thousand dollars, to build a bridge at the above named place, equal to a bridge known and called by the name of the Earnest-ville bridge, in Greene county, Tennessee; to do the work, in every and all respects, equal to the Earnest-ville bridge.”
The contract then sets out the specifications of the bridge, and proceeds: The above bridge to be completed against the first day of October, 1861, unless providential accidents should intervene; then, in that case, a reasonable time for said completion of the bridge. We, the said board of directors, bind ourselves to the said William A. Stover, to pay him for the above bridge building according to the following programme, viz: Five hundred dollars at the commencement of the said bridge; five hundred dollars when the masonry is half done; one thousand dollars when the masonry is completed; five hundred dollars when the main timbers are on the ground; five hundred dollars when the bridge is *488 built half way over the river, and the balance when the bridge is completed and received, to amount to five thousand and five hundred dollars. To all and every part of the above, we, the directory, bind ourselves to pay the said Stover according to the above programme; and if failing to do, the said Stover is to be allowed six per cent, interest on all calls in monies not paid into bis hand when called for. For all which, we bind ourselves, as directors, in the penal sum of eleven thousand dollars, for the faithful performance of the above agree7 ment. We further bind ourselves to furnish the said Stover the right of bank and ways for ingress and egress, rock quarries and framing yards, &c. We further agree together that on any difference in - the final settlement of the above agreement, that the said Stover and directors are each to choose two men, and in case they should fail to agree, then the arbitrators to choose the umpire, and the decision to be final between us.
“ Signed, sealed and delivered in the presence of us, this -4th day of March, 1861.
“ Wm. A. Stover, [l. s.]
“Wm. Girdster, Chairman, [l. s.]”
Under the above contract the work of building the bridge commenced, but after progressing to a considerable extent, and before its completion, a flood came and washed it away. The builders re-commenced, and completed nearly all the work, excepting, perhaps, a part of the floor. The contractor, Wm. A Stover, with his partner, subsequently taken, files this bill to recover not only the sums stipulated in the contract, but also *489 compensation for the additional labor and material, made necessary by the flood, insisting that nnder a proper construction of the contract, they are thus entitled; that the contract was not by 'them a covenant against the act of God. To determine the meaning of this mutual covenant, we must- look to its several parts. In doing so, we conclude the builder took the risk of. flood and all other inevitable accidents.. In the first part of the contract, which is peculiarly the covenant of Stover, it is provided, “The.above bridge tó be completed against the first day of October, 1861, unless providential accidents should intervene, then, and in that case; a reasonable time for said completion of the bridge.”
In this clause, we see, not inferentially, but with positive certainty, the contractor securing himself against inevitable accident, and inserting a condition protecting' himself from loss, by liability on his covenant, for a failure to complete the work in the time fixed, if such inevitable accident shall overtake* - him in his work. Having an eye, then, to .this probability, 'and understanding, as he did, -the danger to the work, and', fully- appreciating the character of that" danger, we conclude, undoubtingly, that he not. .only fortified himself in the time for the completion - of the work as prescribed in' the conditional clause, but that he also made his prices in view of the chances for such accident as did befall him.
If this interpretation of the instrument needs support, we find it in the terms of payment. By them, fifty-five hundred dollars are to be paid for the work, payments to be made at intervals, with the striking *490 provision that the last payment, of twenty-five hundred dollars, is to be paid “ when the bridge is completed and received.” This was the opinion of the Chancellor; he so pronounced.
We affirm his decree, and remand the cause for its execution.